FILED
2017 Aug-10 PM 03:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FRANCIS B. SANI, | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } Case No.: 2:16-cv-01218-RDP |
| | } |
| UNIVERSITY OF ALABAMA BOARD OF TRUSTEES, | } |
| | } |
| Defendant. | } |

## MEMORANDUM OPINION

### I. Introduction

This case is before the court on Defendant's Motion to Dismiss Second Amended Complaint (Doc. # 17), filed April 14, 2017. The parties have fully briefed the motion (Docs. # 17, 21-23), and it is under submission. After careful review, and for the reasons explained below, the court concludes that Defendant's motion is due to be granted.

### II. Procedural History and Background Facts[1]

In his Second Amended Complaint, Plaintiff seeks relief for alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and Title II of the Americans with Disabilities Act ("ADA"). (Doc. # 15 at 1). Defendant has filed this renewed Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. # 17).

---

[1] Only the facts relevant to the claims in the second amended complaint are relayed here. Plaintiff's complaint outlines a multitude of alleged harms committed against him since 2002. To the extent Plaintiff raises any claim against the University of Alabama at Birmingham, the University of Alabama at Huntsville, or Alabama A&M University, those claims are clearly time barred. Relevant to this case is only the University of Alabama's denial of Plaintiff's application for graduate school.

Plaintiff's allegations involve his involvement with the University of Alabama at Birmingham and the University of Alabama in Tuscaloosa, separate university campuses. *See Knight v. State of* Alabama, 787 F.Supp. 1030, 1126 (N.D. Ala. 1991) (describing UAB's history), *aff'd in part & rev'd in part*, 14 F.3d 1534 (11th Cir. 1994). Indeed, UAB is separately accredited by the Southern Association of Colleges and Schools. *Id.* Both UAB and the University of Alabama in Tuscaloosa are administered by the University of Alabama System's board of trustees. *See Vandenberg v. Aramark Educ. Servs., Inc.,* 81 So.3d 326, 330 n. 5 (Ala. 2011). A professor in the chemistry department at UAB offered to hire Plaintiff to a work-study position in the fall of 2011, but revoked that offer in the spring of 2012. (Doc. # 15 at ¶ 10). Plaintiff alleges that UAB's chemistry department operated under a "de facto discriminatory policy." (*Id.* at ¶ 12). Pursuant to this policy, another UAB chemistry professor (*i.e.*, not the one who made and revoked the offer) told Plaintiff that the chemistry department did not hire African Americans. (*Id.* at ¶ 11).

At the end of the fall of 2012, Plaintiff applied for admission into a doctoral program at the University of Alabama at Tuscaloosa ("Alabama"). (Doc. # 15 at ¶ 12). Plaintiff was "essentially wait-listed" by Alabama until an interview was conducted in the spring of 2015.[2] (*Id.*). Plaintiff was interviewed by several professors, including David Nikles. (*Id.*). Plaintiff alleged that Nikles' wife, a professor at UAB, "disliked" him. (*Id.*). Nikles mentioned the conflict between his wife and Plaintiff during the interview of Plaintiff. (*Id.*). In August 2015, Plaintiff was denied admission to the doctoral program at Alabama. (Doc. # 17 at 2). Plaintiff contends that, while he was not at the top of his class, he was a legitimate candidate with adequate grade point average ("GPA") and Graduate Record Examinations ("GRE")

---

[2] According to the complaint, the interview occurred because Plaintiff brought the extensive wait-listing to the attention of a dean. (*Id.*).

qualifications. (*Id.* at ¶ 13). Plaintiff believes that Alabama considered his GPA and GRE scores "immaterial." (*Id.*).

Plaintiff's complaint also alleges that he suffers from a disabling facial deformity. (*Id.* at ¶¶ 5, 14). His nasal deformity "is of an asymmetrical variety." (*Id.* at ¶ 5). Corrective surgery was attempted in 2005, but failed. (*Id.*). Plaintiff alleges that he has "faced myriad problems," including work-related problems similar to those that occurred at UAB and Alabama. (*Id.*). Aside from his allegation that he faced problems from his nasal deformity, Plaintiff never connects the problems at UAB or Alabama to that physical characteristic.

To show that his facial deformity is disabling, Plaintiff references his prior work history in the complaint. Plaintiff was employed by Pizza Hut for approximately three years before October 2012. (*Id.* at ¶ 6). Plaintiff was employed by Papa John's from April 2014 to April 2016. (*Id.* at ¶ 7). Plaintiff alleges that Pizza Hut's managers "used employees . . . to assist in keeping the Plaintiff from assisting with in-store customers due to his unsightly facial deformity." (*Id.* at ¶ 6). Likewise, managers at Papa John's obstructed him from performing customer service tasks. (*Id.* at ¶ 7).

Plaintiff asserts that he was "blacklist[ed]" by the University of Alabama system based on his disabling facial deformity. (*Id.* at ¶¶ 12, 16). Moreover, he claims that UAB implemented a "racist ideology" that affected Alabama's graduate admissions decision in violation of Title VII. (*Id.* at ¶ 20).

III. **Standard of Review**

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the

speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, Plaintiff's complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock, & Stone, PLC*, 413 F. Appx. 136, 138 (11th Cir. 2011) (unpublished) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-

pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

IV. **Analysis**

For the reasons explained below, the court concludes that Plaintiff has not plausibly pled any claim for relief against Defendant. Because the court has granted Plaintiff two opportunities to amend his complaint, this action is due to be dismissed.

A. **Plaintiff's ADA Title II Claim**

Plaintiff alleges that Defendant discriminated against him by denying his application for admission due to his facial deformity. (Doc. # 15 at ¶¶ 15-19). Specifically, Plaintiff suffers from an asymmetrical nasal deformity which has resulted in "myriad problems in multiple facets of society." (*Id.* at ¶ 5). Title II of the ADA provides:

> Subject to the provisions of this [title], no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. In order to plead an ADA Title II claim, a plaintiff must show:

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).

Title II of the ADA defines a qualified individual with a disability as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for . . . participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Among other definitions, the ADA defines "disability" to include: "(A) a physical or mental impairment that substantially limits one or

more major life activities of such individual; . . . or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). An individual meets the "regarded as" prong if "the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Wolfe v. Postmaster General*, 488 F. Appx. 465, 468 (11th Cir. 2012) (emphasis omitted) (quoting 42 U.S.C. § 12102(3)(A)).

In his second amended complaint, Plaintiff alleges that he has a facial deformity. (Doc. # 15 at ¶ 5). Plaintiff asserts two theories as to why his facial deformity is disabling (thus bringing him under the protection of the ADA): 1) it prevents Plaintiff from performing a major life activity, namely working; and 2) Plaintiff was regarded as having such an impairment by Alabama.

As an initial matter, the court certainly recognizes that it is plausible that an individual with a substantial facial deformity may be discriminated against in a line of work, particularly in one which requires customer contact. However, Plaintiff's discussion of *his work experience while at other employers* in support of his allegation that his nasal deformity prevented him from working at UAB is off the mark. (Doc. # 15 at ¶¶ 6-7). In fact, the work experience he has described in the complaint indicates that his alleged disability did not prevent him from working. Plaintiff was hired on two separate occasions by two different companies – Pizza Hut and Papa John's. (*Id.*). He has asserted he worked with Pizza Hut from 2011 to 2012 and Papa John's from 2014 to 2016, so the facial deformity is not a disability under the first theory. (*Id.*).

To show that a disability affects the major life activity of working, a plaintiff must demonstrate that the disability precluded him or her from working in a "class of jobs" or a "broad range of jobs."[3] *Rossbach v. City of Miami*, 371 F.3d 1354, 1360 (11th Cir. 2004). In this case, Plaintiff has not alleged that the facial deformity precluded him from performing a broad range of jobs. Accordingly, he has not plausibly alleged a disability substantially limiting his major life activity of working.

Second, in an attempt to satisfy the "regarded as" prong, Plaintiff alleges that he was "blacklisted" and ridiculed at UAB. (*Id.* at ¶ 12). But, Plaintiff's statement that "a discriminatory policy" was the cause of the "customary types of derision (whisper-campaigns, mockery, social exclusion, etc.)" in the chemistry and MSE departments at UAB is wholly conclusory. (*Id.* at ¶ 9). Even if the derision was the result of Plaintiff's facial deformity (which is not alleged in the second amended complaint), Plaintiff has not alleged how the derision he faced at UAB caused the negative admission decision at Alabama. Simply put, the alleged events at UAB in no way indicate that Alabama's admissions officers regarded Plaintiff as having a disability.

Notably, Plaintiff does not allege that any faculty or staff at Alabama perceived his deformity to be disabling. Nor does Plaintiff allege that the nature of his deformity is such that, upon seeing it, Alabama faculty or staff might reasonably have regarded it as disabling. Plaintiff

---

[3] In 2008, Congress passed the ADA Amendments Act of 2008 (hereinafter referred to as the "ADAAA"), which became effective in 2009. *See Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1267 (11th Cir. 2014). The ADAAA lowered the thresholds used to determine whether an individual is disabled for purposes of the ADA. *Id.* at 1268. The Eleventh Circuit has not revisited the standard for determining whether an individual is disabled because a disability substantially limits the ability to work since the ADAAA's passage. Nevertheless, the Equal Employment Opportunity Commission ("EEOC") has issued relevant guidance about the issue since 2009. In its guidance, the EEOC explains that an individual is substantially limited in the life activity of working if "the impairment substantially limits his or her ability to perform a class of jobs or broad range of jobs in various classes as compared to most people having comparable training, skills, and abilities." 29 C.F.R. pt. 1630, app., Substantially Limited in Working (2016). It asserts that most individuals should be able to demonstrate their ADA eligibility with proof that their disability substantially limits an activity other than working. *Id.* But, the EEOC's standard for when a disability substantially limits the activity of working is substantially similar to the Eleventh Circuit's standard provided in *Rossbach*. And, Plaintiff has not alleged that his nasal deformity substantially limits any activity other than working.

7

also does not contend that he faced the same treatment at Alabama that he was subjected to at UAB.

Plaintiff claims that knowledge about his impairment and the "blacklist[ing]" was conferred to Alabama via numerous channels, including a married couple (one of whom works at UAB and the other at Alabama). (*Id.* at ¶ 12). According to Plaintiff, the transfer of information and knowledge allegedly caused Defendant to regard him as disabled. (*See id.* at ¶ 16). However, his allegations fail to logically link the information known by UAB professors or David Nikles to a decisionmaker who rejected his graduate school application.

Plaintiff also asserts that his 2015 Equal Employment Opportunity Commission ("EEOC") complaint caused Defendant to regard him as disabled. (*Id.* at ¶ 18). However, Plaintiff has not alleged that Alabama's admissions decisionmakers regarded him as disabled or that they knew of the EEOC complaint. (*See id.* at ¶ 19 (offering only a conclusion that Alabama based the rejection on considerations of disability, without offering a factual basis for this assertion)).

Additionally, Plaintiff claims that Alabama's denial of his application "was both an affirmation of UAB's existing discriminatory policy against the Plaintiff as well as an act of retaliation against the Plaintiff for filing the EEOC complaint." (*Id.* at ¶ 18). These allegations are entirely conclusory, with no supporting factual basis. Furthermore, Defendant's mere knowledge of Plaintiff's alleged deformity is insufficient for this court to infer that Defendant perceived the deformity to be a significant impairment. *See Wolfe*, 488 F. Appx. at 468. To be sure, under *Wolfe*, the "regarded as" prong is met whether or not the deformity actually impaired Plaintiff. However, the complaint still fails to state a claim for relief because it is not sufficiently alleged that Alabama even perceived Plaintiff to be disabled.

Finally, Plaintiff fails to state or indicate that similarly qualified applicants outside of his protected class were treated more favorably than him. *See Wolfe*, 448 F. Appx. at 468 ("To establish unlawful disparate treatment, a plaintiff generally must demonstrate that his employer treated similarly situated employees outside of his protected class more favorably than he was treated."). Plaintiff makes a conclusory statement that "the primary source of disqualification was . . . his disability." (Doc. # 15 at ¶ 17). But, Plaintiff fails to offer any supporting factual allegations of similarly situated individuals who gained admission. There is simply no plausible allegation in the Second Amended Complaint that Alabama excluded individuals from graduate school because of perceived or actual disabilities. Therefore, Defendant's motion to dismiss Plaintiff's ADA claim is due to be granted.

### B. Title VII Claim

Title VII prohibits employers from discriminating against employees or applicants for employment based on an individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Before filing a Title VII claim, an individual must file a charge of discrimination with the EEOC. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). Plaintiff has obtained a right to sue notice from the EEOC. (Doc. # 15 at 1).

Plaintiff claims that Alabama violated Title VII when it denied his application to their doctoral chemistry program. (*See* Doc. # 15 at ¶ 20). For Plaintiff's claim to survive a Rule 12(b)(6) motion to dismiss, Plaintiff must first plausibly plead that his application for admission was also an application for employment. *See* 42 U.S.C. § 2000e-f ("The term 'employee' means an individual employed by an employer."). He also must plead that Alabama denied his application because of a characteristic protected under Title VII, such as race. 42 U.S.C. § 2000e-2(a)(1).

In its motion to dismiss, Defendant argues that a graduate school application cannot be an application for employment. (Doc. # 17 at 6-7). For support, Alabama cites *Batchelder v. University of California*, 229 F.3d 1156, 1156 (9th Cir. 2000) (unpublished). In *Batchelder*, a student sued the university because his law school application had been denied. *Batchelder*, 229 F.3d at *1. The Ninth Circuit held that the plaintiff failed to state a claim under Title VII because he only presented "a student admission claim." Plaintiff, in the present case, also has not directly alleged that his application for admission was an application for employment. (*See* Doc. # 15 at ¶ 20). Nevertheless, this court is not bound by the rulings of the Ninth Circuit. *McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) ("A circuit court's decision binds the district courts sitting within its jurisdiction . . . .").

In the Eleventh Circuit, courts "have typically refused to treat [graduate students] as 'employees' for Title VII purposes only where their academic requirements were truly central to the relationship with the institution." *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004). The complaint describes the work-study that was offered to Plaintiff at UAB, which was subsequently revoked. (Doc. #15 at ¶ 10). Moreover, it describes how important work study is for individuals pursuing degrees in chemistry or MSE at UAB. (*Id.* at ¶ 9). However, none of those facts relate to Plaintiff's application for the doctoral program *at Alabama*. Indeed, Plaintiff never directly alleges that the application to the Alabama doctoral program was an application for employment.[4] Without a more specific pleading, Plaintiff essentially asks the court to infer -- without any supporting allegations -- that all graduate school applications are employment

---

[4] Plaintiff describes being denied employment at UAB. (Doc. # 15 at ¶ 20). In the next sentence of paragraph 20, Plaintiff alleges that the ideology which deprived him employment at UAB reached Alabama, thus implying that he also sought employment at Alabama. (*Id.*). This implication, however, does not create a plausible claim because Plaintiff never describes the employment he sought at Alabama or the work he would have performed at Alabama. Furthermore, Plaintiff's allegation that he was deprived of "graduate work" at Alabama is also insufficient to imply that he sought employment through his application to graduate school. (*Id.* at ¶ 16).

applications.[5] This is tantamount to a "naked assertion devoid of further factual enhancement," and, thus, falls short of the required pleading standard. *Iqbal*, 556 U.S. at 667.

Moreover, Plaintiff avers that the Alabama denial deprived him of "academic work experience *vital in obtaining employment*." (Doc. # 15 at ¶ 16) (emphasis added). This indicates that Plaintiff views the application as one centered on academic experience, which would later be used to obtain employment. Accordingly, the central purpose of the application was to gain academic knowledge, not employment. *See Cuddeback*, 381 F.3d at 1235 (stating that courts should not treat students as employees where their academic requirements are central to the relationship with the institution at issue in the action). Because Title VII does not provide for non-employer liability, and because Plaintiff has failed to allege that he submitted an employment application, Plaintiff's Title VII claim is due to be dismissed.

Putting aside the question of whether Plaintiff's application to Alabama constituted an employment application, Plaintiff's Title VII claim fails for an additional reason: he has not plausibly pled the application was denied due to race. *See* 42 U.S.C. § 2000e-2(a)(1); *see also Arrington v. Alabama Power Co.*, 2017 WL 192756 (N.D. Ala. Jan. 18, 2017) (ruling that a complaint which does not identify any act of discrimination based on race does not give rise to a claim for a violation of Title VII). Plaintiff does not allege that he is a member of any protected class or race. *See Benton v. Town of South Fork*, 587 F. Appx. 447, 451 (10th Cir. 2014) (finding that when race is not identified and no facts are suggested that would allow a reasonable inference of racial discrimination, a race-discrimination claim is facially insufficient).

---

[5] Certainly, the court understands that some graduate students are also considered employees of their universities. It logically follows that some applications for admission into a doctoral program might also be applications for employment. However, without a more specific allegation of the work he applied to perform, Plaintiff has not presented a plausible allegation that his application for admission into a doctoral program was an application for employment. *See Cuddeback*, 381 F.3d at 1234 (ruling that the economic realities test had to be applied to graduate students to determine whether they can be considered employees).

11

Furthermore, even if Plaintiff had claimed membership in a protected class, Plaintiff makes no allegation that Alabama discriminated against his protected race. (*See* Doc. # 15 at ¶ 20). .

Instead, Plaintiff has (at best) alleged a de facto discriminatory policy in the chemistry and MSE departments at UAB. But, there are no plausible allegations that the same policy is present, or was applied, in admissions decisions at Alabama. Plaintiff alleges "that there was a racist and discriminatory system in place at the UAB chemistry department" and that information could have been transmitted between UAB and Alabama by the Nikles. (Doc. # 15 at ¶ 14). Despite any purported link between Alabama and UAB, this pleading indicates nothing "more than a sheer possibility" that Alabama's decisionmakers acted in conformity with alleged race discrimination at UAB. *Iqbal*, 556 U.S. at 678. Conclusions and bald assertions, such as are found in paragraph 14 of the second amended complaint, are insufficient under *Iqbal* and *Twombly* to raise a claim for relief. *Iqbal*, 556 U.S. at 681 (citing *Twombly*, 550 U.S. at 551).

Because Plaintiff has not alleged adequate facts to support a plausible conclusion that Alabama denied his graduate school application due to his race, Defendant's motion to dismiss is due to be granted, and Plaintiff's Title VII claim is due to be dismissed.

### C. Title VI Claim

Plaintiff's second amended complaint does not allege any Title VI claim for relief. (*See* Doc. # 15 at ¶ 20). Accordingly, any Title VI claim previously asserted is due to be dismissed.

## V. Conclusion

For the reasons stated above, Defendant's motion to dismiss is due to be granted and Plaintiff's claims are due to be dismissed without prejudice. An order consistent with this memorandum opinion will be entered.

**DONE** and **ORDERED** this August 10, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE